AHMED JAMAL, Pro Se
REEM SUQI, Pro Se
94 Wanaque Ave #1025
Pompton Lakes, NJ 07442
ajandrs75@gmail.com
(201) 416-9441

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2024 FEB 15  P 12: 51

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMED JAMAL and REEM SUQI,<br><br>                          Plaintiffs<br><br>v.<br><br>ALLY FINANCIAL INC., A/K/A "ALLY",<br><br>TOYOTA MOTOR SALES, USA, INC.,<br><br>DEL AUTOMOTIVE, INC., D/B/A DEL TOYOTA, JAMES LOPEZ, HEATHER KARKOSKA,<br><br>XYZ COMPANIES 1-10, and<br>JOHN AND JANE DOES 1-20.<br><br>                          Defendants. | DOCKET NO.<br><br><br><br><br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiffs Ahmed Jamal and Reem Suqi by way of Complaint against the above captioned Defendants says:

### BACKGROUND

1.      This action is brought against the captioned defendants to remedy civil violations of fraud, forgery, RICO, and the Consumer Fraud Act, in addition to other causes of action.

2.      The matter arises from an automobile offer made on an internet marketing board, which, after Plaintiffs receiving two different contracts, was then <u>rescinded in writing by the seller</u>, Del Toyota, on April 26, 2021, as Plaintiffs did not execute and deliver the necessary contracts Del Toyota generated on April 3, 2021.

3.      Del Toyota employees then conspired with Ally to establish an unauthorized loan for the subject automobile in Plaintiffs' identities and "*utilized*" a prior contract from March 29, 2021 that lacked consideration, was canceled, and replaced on April 3, 2021 with different terms.

4.      An Ally employee agreed, at Del Toyota's request, and "*pushed through*" the month-old contract in contradiction to Ally's underwriting guidelines on about April 29, 2021.

5.      In May 2021 Plaintiffs began to uncover the fraud upon receipt of mail from Ally; and when Del Toyota was confronted about it, its General Manager then cheerfully and arrogantly confessed to the details of the fraud, including who at Ally, how, and when.

6.      This, in addition to another Del Toyota employee earlier asserting in writing of a systemic and continuous business practice to deceive the States of "*New Jersey, New York, [and] even Delaware*" in official applications for title.

7.      The fraudulent execution of the Ally account and its debt was retaliatory in motive by Del Toyota employees, as to avoid financial loss from the return of the vehicle.

8.      Ally, aware of the scheme, chose to further it by reinforcing the debt and attempting to collect on it through ongoing misrepresentations to Plaintiffs and to credit reporting agencies ("CRAs").

9.      No payments have <u>ever</u> been made to Ally, now over two years, yet Ally has not repossessed the vehicle, which remains parked in New Jersey and without registration, and refuses to communicate with Plaintiffs even when required to do so by law under the FCRA.

10.     The corporate defendants, and to each, their unscrupulous employees and agents whom all willingly chose to partake in the forgery, deceit, concealments and misrepresentations did so willfully and with wanton disregard of the harms to Plaintiffs.

## PARTIES

### Plaintiffs

11.     Plaintiff Ahmed Jamal (hereinafter "A.J."), a New Jersey resident, was a co-applicant for an Ally retail credit product for financing of an automobile in the State of New Jersey, facilitated through the various relationships amongst the defendants.

12.     Plaintiff Reem Suqi (hereinafter "R.S."), a New Jersey resident, was a co-applicant for the same retail credit application with A.J. (hereinafter collectively "Plaintiffs").

### Corporate Defendants

13.     Defendant ALLY FINANCIAL INC. and its subsidiaries, assignees, trusts, successors and interests (hereinafter "Ally") is a Delaware corporation, with its head operations in the State of Michigan and or Utah, lawfully doing business throughout the State of New Jersey and is in the business of banking and its related products and services.

14.     Ally is a banking and financial institution regulated under the laws of The United States and State of New Jersey and holds itself out to the public as a national and professional banking and financial institution specializing in consumer retail banking, including but not limited to offering retail credit products for automobiles through agent agreements with automobile manufacturers and or automobile dealerships.

15.     Defendant TOYOTA MOTOR SALES, USA, INC. (hereinafter "Toyota") is a Texas Corporation lawfully doing business throughout the State of New Jersey and is the North American Toyota sales, marketing, and distribution subsidiary of the Toyota Motor Corporation

devoted to the United States market whom promotes for sale and lease of its automobiles by advertisements and operates and or directs agents and or representatives and or employees to carry out its sales and marketing objectives across the United States.

16.     Defendant DEL AUTOMOTIVE (hereinafter "Del")  d/b/a DEL TOYOTA is a Pennsylvania corporation, whom, upon information and belief,  conducts business by and through its agent agreement with TOYOTA as DEL TOYOTA (collectively as "Del Toyota"); and is in the business of marketing and selling of Toyota automobiles and their related products and services throughout New Jersey, including but not limited to, utilizing internet advertising and employing agents and or representatives and or employees to for its sales practices.

17.     Del Toyota holds itself out to the public as a trusted brand and professional auto manufacturer and retailer specializing in the marketing, sales, and service of Toyota vehicles and facilitates consumer financial services for such sales of its automobiles and ancillary services.

**Individual Defendants**

18.     Defendant JAMES LOPEZ a/k/a JIM LOPEZ (hereinafter "LOPEZ") is an officer, employee, and or agent of DEL TOYOTA, representing himself as its General Manager and; has controlled, directed, and/or participated in the management and operation of Del Toyota; and has participated in, managed, controlled, and/or facilitated the unlawful acts alleged in this Complaint.

19.     Defendant HEATHER KARKOSKA (hereinafter "KARKOSKA") is an officer, employee, and or agent of DEL TOYOTA, representing herself as its Director of Finance and; has controlled, directed, and/or participated in the management and operation of Del Toyota; and has participated in, managed, controlled, and/or facilitated the unlawful acts alleged in this Complaint.

20.     Defendant JACK DELVECCHIO is a corporate officer of DEL TOYOTA and has controlled, directed, and/or participated in the management and operation of Del Toyota; and has participated in, managed, controlled, and/or facilitated the unlawful acts alleged in this Complaint and subject to other liabilities.

**Unknown Defendants**

21.     XYZ FICTICIOUS COMPANY 1-10, upon information and belief, are additional unknown corporate defendants, herein reserved for additional named parties to be identified.

22.     JOHN and JANE DOES 1 through 20 are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, members, managers, agents, servants, employees, representatives and/or independent contractors individually and or of any of the Corporate Defendants, known or unknown, who have been involved in the conduct that gives rise to this Complaint but are heretofore unknown to the Plaintiffs. As these defendants are identified, Plaintiffs shall amend this Complaint to include them.

## JURISDICTION & VENUE

23.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 to the extent that the action involves federal questions under 18 U.S.C. § 1961, 15 USC § 1681, 18 USC § 1028,  and U.S. Mail & Wire fraud.

24.     This Court has jurisdiction over the state law claims herein pursuant to supplemental jurisdiction.

25.     Alternatively, this Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the plaintiffs are citizens of New Jersey and all defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

26.     Venue is proper in the District Court for the District of New Jersey because all Plaintiffs reside in New Jersey and is where the intentional harm was directed at and because a substantial part of the events giving rise to the claim occurred in the District of New Jersey and the property that is the subject of this claim is located in the District of New Jersey.

## FACTS RELEVANT TO ALL PARTIES

27.     On about March 29, 2021, Plaintiffs responded to an advertisement for Del Toyota on an automobile internet marketing board.

28.     The advertisement promotes new Toyota vehicle specials and having the target solicitation areas, individually selected, of "Northeast, PA, NJ, NY".

29.     On about March 29, 2021, a representative of Del Toyota communicated through telephone with A.J. after he responded to the advertisement.

30.     The representative had made an offer to Plaintiffs for a 2021 Toyota Sienna at a cost of $44,300.00 and lease financing terms of 35 monthly payments of $485.00 and $0 (zero dollars) due at signing.

31.     The representative further stated that he must first be paid $485.00 through electronic payment prior to commencing preparation of and providing the paperwork with the required disclosures to Plaintiffs.

32.     On March 29, 2021, a second representative for Del Toyota then contacted A.J. and during their conversations, stated:

       a.    that the transaction for the offer above must be completed by March 31, 2021 due to dealer incentives Del receives from its principal Toyota, as it was both the end of month and end of quarter; and

      b.      via text message, requested that he be sent pictures of Plaintiffs' driver licenses in a manner that ***"would look as if you were here"*** *[because]* ***"New Jersey New York even Delaware has been giving us a hard time if the licenses don't look natural"***.

33.      Plaintiffs advised Del Toyota that they will not be able to complete the transaction by the March 31, 2021 date that Del Toyota wanted.

**I.**      **The March & April Contracts.**

34.      During the time of this controversy there were two different sets of contracts produced by Del Toyota in relation to the offer above.

35.      Both sets of contracts were preprinted with, among other things, a March 31, 2021 date by Del Toyota.

36.      The first set was generated and mailed to Plaintiffs New Jersey home on about March 29, 2021 (hereinafter 'First Set').

37.      The second set was drafted on April 3, 2021 (hereinafter "Second Set") and also sent to be executed and returned by Plaintiffs in New Jersey.

**The 'First Set'**

38.      Plaintiffs were informed on about March 29, 2021 that a set of contracts and documents from Del Toyota had been sent to Plaintiff's home.

39.      Included among them was an Ally SmartLease contract that stipulated:

      a.      $512.66 initial cash due; and

      b.      36 monthly payments of $485.00.

40.     A.J. had advised multiple Del Toyota's representatives that there were issues in the terms of the contracts received and of a questionable blank paper that was included in the packet received that Del Toyota marked to be signed.

41.     In response, Plaintiffs were told by Del Toyota representatives to:

      a.     continue with signing all documents, including the questioned blank paper, and to notarize them all;

      b.     that this method of transaction was common practice for Del Toyota whom "*sells lots to customers in New Jersey every month*";

      c.     that Plaintiffs are not reading correctly and or understanding the finance intricacies; and

      d.     Del Toyota will explain it after they receive the contracts from Plaintiffs.

42.     On April 3, 2021, A.J. met with Heather Karkoska who represented herself to him as the Finance Director of Del Toyota.

43.     It is not standard practice for an auto dealership Finance Director to tend to a customer for a day-to-day transaction.

44.     While A.J. met with Karkoska he was guarded and did not hand over the 'First Set' contract to her or any Del Toyota representative that had asked to even "just see them".

**The 'Second Set' Contracts**

45.     On April 3, 2021 after discussing and changing the terms of the offer, Karkoska generated a new set of documents and contracts which also included among them a new Ally SmartLease finance contract.

46.   The 'Second Set' Ally contract contained different terms, including but not limited to:

    a.   a capitalized cost reduction;

    b.   monthly payments of $485.11; and

    c.   $615 initial cash due.

47.   It was also later found that the Second Set contract contained material misrepresentations pertaining to the transaction, including of a $615 protection plan.

48.   On April 3, 2021, Karkoska received from A.J. a check for $615 made payable to Del Toyota; and handed him the 'Second Set' of paperwork to take back to New Jersey to sign and return to Del Toyota.

49.   Karkoska then took the envelope A.J. had containing the 'First Set' and responded to his objection that: a) the envelope [she took] contains the first set contracts; and b) they are canceled; and c) she must shred them due to the personal information they contained.

50.   On April 3, 2021, a spot-delivery of the Toyota vehicle occurred.

51.   A "Spot Delivery" is a sales tactic used in the automobile industry whereby a customer is put into the vehicle prior to contracts and or financing on the vehicle is completed.

    a.   The objective of a spot-delivery is to get customers to take the car prior to securing the necessary financing and or completion of the transaction for any number of reasons, including pending completion of any of the agreements necessary to make, execute, and or complete the contracts and transaction.

    b.   The dealer assumes the risk of a spot-delivery and must recover the vehicle if the transaction falls through.

52.     Del Toyota has previously been a named defendant in one or more legal actions by customers arising from failed spot deliveries, including for charges of assault and battery.

**II.      Del Toyota Withdraws Entire Offer on April 26, 2021.**

53.     Plaintiffs as of April 26, 2021 still did not execute, make, and or complete, the necessary 'Second Set' contracts.

54.     Plaintiffs did not complete them due to a vehicle issue, now largely moot, that Del Toyota was evading and elusive to.

55.     At one point, Karkoska told A.J. to "*call around local [New Jersey] Toyota dealers*" and "*let them know it's a manufacturer defect*".

56.     Plaintiffs were advised by the other Toyota dealers that Del Toyota's claim was highly improper.

57.     Upon information and belief, Del Toyota was attempting to have the parts fraudulently replaced under warranty and avoid Plaintiffs returning the vehicle to Del Toyota.

58.     Karkoska advised A.J. in late April that Plaintiffs should expect the vehicle to be unusable for one or more months since Del Toyota did not submit the necessary applications for title, as the April 3, 2021 contracts have not been signed and returned.

59.     On the evening of April 26, 2021, Lopez, via a telephone call with A.J., communicated that:

    a.      Del Toyota has elected to not move forward with the transaction;

    b.      Del Toyota is undoing everything;

    c.      Del Toyota will be issuing a full refund of monies paid; and

    d.      will arrange to send its employees to New Jersey to pick up the vehicle.

60.     A.J. requested to be sent an email from Del Toyota memorializing the conversation points above that were agreed to and had received an email from Karkoska.

61.     During the April 26, 2021 telephone conversation, Lopez was hostile and angry when he chose not to move forward with the transaction as Lopez's decision would have then returned to Del Toyota's inventory, what was a new vehicle, now used and of lesser resale value and cause a financial loss to Del Toyota.

62.     The value lost that would have been realized is greater than the approximately $1,000 that would have resolved the issue.

63.     Later in the same evening of April 26, 2021, Del Toyota attempted to evade the refund of monies paid by Plaintiffs by deceitful means.

64.     Plaintiffs had stated to Del Toyota to either send by mail or with their employees a check of the refund.

**III.     Lopez and Karkoska Then Disappear.**

65.     Between April 27, 2021 and April 30, 2021 Del Toyota did not respond to any of the several communications inquiring on the status of the refund and pick up of the vehicle. Specifically:

        a.     Lopez did not respond to email communications on April 28, 2021, or April 29, 2021, or April 30, 2021; and

        b.     Karkosa did not respond to any communications, including text messages, on April 27, 2021; April 28, 2021; April 29, 2021; or April 30, 2021.

66.     A.J. then contacted Toyota's national customer service line on April 30, 2021 to advise them of the matter.

67.     The representative from Toyota's customer service stated that someone from Toyota will reach back out to plaintiffs, to which no one has to date.

68.     While Lopez and Karkoska were not responding to Plaintiffs after April 26, 2021, they had during that time planned, controlled, and or organized with Ally and or an employee of Ally to create an Ally account and debt in the Plaintiffs' identities.

**IV.     Plaintiffs Learn of the Fraud.**

69.     On about May 5, 2021 Plaintiffs received a letter via U.S. Mail in New Jersey from Ally informing Plaintiffs of an auto lease account established in Plaintiffs names.

70.     Plaintiffs further received a second correspondence in the mail from Ally with an account statement that:

    a.     was dated April 29, 2021;

    b.     demanded payment of $486.00 by April 30, 2021; and

    c.     reflects a past due amount of $486.00 with a date of 12/30/99.

71.     A.J. telephoned Del Toyota on about May 5, 2021 to bring attention to what was thought to be a computer or clerical error.

72.     A.J. was first advised that neither Lopez or Karkoska were in the dealership; and only after he spoke with another Del Toyota employee to advise of the events that transpired did Lopez suddenly enter the conversation.

**V.     Del Toyota's Confessions.**

73.     Now, a very gleeful Lopez, exclaims to A.J.: "*congratulations! … your brand-new Toyota!*" and other cliché auto dealer phrases—statements that would be to the contrary of their April 26, 2021 communications.

74.     A.J. objected to Lopez's statement and reminded him that:

a. the Ally lease and contracts Lopez himself even demanded on April 26, 2021 still remained with Plaintiffs and incomplete; and

b. that Plaintiffs did not authorized Lopez or anyone at Del Toyota to transmit, execute, make, and or complete the Ally lease or transaction.

75. Lopez then enthusiastically said they *"found {unintelligible} agreement"* and had then *"utilized that"* after their April 26, 2021 conversation.

76. A.J. then asked Lopez if he [Lopez] realizes that he just admitted to fraud.

77. Lopez now ruffled, proclaimed that after speaking to JOHN DOE 1, an employee of Ally, JOHN DOE 1 had agreed to *"push through"* the creation of the Ally account.

78. Lopez described JOHN DOE 1 to be an Ally Field Account Rep and or Account Manager for Del Toyota (hereinafter "DOE 1" or "Ally.Del.Rep").

**VI.    Ally Financial and the Proverbial Hot Potato.**

79. On May 5, 2021, A.J. emailed Ally about the unauthorized account and stated that if Ally seeks to enforce the fraudulent account and its debt that it would be a named defendant for participating in this fraud.

80. Attached to that May 5, 2021 email to Ally was a picture taken of the unsigned Ally SmartLease contract with a computer system-time in the background reflecting the same date the email was sent and within minutes of; and also attached from April 26, 2021 email communication from Del Toyota.

81. On May 5, 2021, A.J. also telephoned Ally's Fraud Department to bring to their attention of the unauthorized account.

82.     A.J. advised Ally's fraud department representative that Lopez had stated to him that the Ally.Del.Rep had "pushed through" the creation of the account and that Ally investigators should be aware of the internal employee being an accomplice.

83.     The representative from Ally's fraud team stated to A.J. that the account was: a) created on about April 29, 2021; b) no contract appears in the system, and c) that it was irregular for an account to be created as such with an application purporting to be from March.

84.     Upon information and belief, Ally's underwriting guidelines require an additional and or exception approval and or system override by Ally when a contract is not completed and or received within a specific number of days, to which the submission exceeded.

85.     Furthermore, upon information and belief, Ally's security interest in the debt has not been perfected according to its underwriting guidelines.

86.     After the May 5, 2021 call to Ally, their fraud department deflected the issue to Ally's Executive Relations.

87.     Weeks after, an employee from Ally's Executive Relations team identified as Brandon requested Plaintiffs to email Ally evidence in support of the dispute.

88.     Plaintiffs obliged and sent again an email to Ally's fraud and executive relations departments the picture of the 'Second Set' incomplete Ally SmartLease contract in hand and April 26, 2021 communications from Del Toyota cancelling the transaction in its entirety.

89.     In June 2021, Brandon left a voicemail message to A.J. requesting to speak live so he may share the status of their investigation.

90.     During that conversation, Brandon stated that Ally's investigation was inconclusive because Del Toyota purported to Ally another contract and both contracts reflected the preprinted March 31, 2021 date.

91.   A.J. then advised Brandon that:

   a.   regardless of any contracts being purported by Del Toyota, the deal was
        extinguished in its entirety on April 26, 2021, as evidenced by the email;

   b.   the account must be canceled;

   c.   Ally will be viewed as a conspirator of the fraud if his earlier statement is
        their final position; and

   d.   A.J. requested that a member of Ally's legal department contact him.

92.   A.J. advised Ally to seek proof of the alleged consideration paid on the first
contract purported by Del Toyota, as an email from Del Toyota acknowledges the $615 amount
received based on the second contract and not the $512.66 amount stipulated in the first contract.

93.   Ally did not provide or proffer any reason or explanation as to the existence of the
incomplete contract in Plaintiff's hand and or how they have come to possession of it.

## VII.   Plaintiffs Damaged by Ongoing Misrepresentations.

94.   On about July 2021 Plaintiffs were alerted through a credit monitoring service
that an account from Ally had been reported to their credit files.

95.   While still awaiting a response from Ally, Plaintiffs began to receive collection
calls from other employees and or agents of Ally.

96.   On about July 5th, 2021 A.J. spoke with a member of Ally's fraud department
again and the representative stated that within its fraud system it states that by and or through
DOE 1 a/k/a Ally.Del.Rep:

   a.   the fraud case was notated as resolved by means of account closure

   b.   Del Toyota had taken possession of the vehicle; and

       c.       alleged Del Toyota filed a police report in New Jersey, however unknown as to what the report claimed or would have claimed.

97.     Plaintiffs to date have not been made aware of any such report made against them.

98.     On about July 7, 2021, Plaintiffs sent via email and certified mail to Ally, Del Toyota, Lopez, and Karkoska a Notice of Intent and Preservation Notice.

99.     On about October 2021, Plaintiffs received in response from Ally U.S. mail correspondence restating Ally's position of upholding the unauthorized account and to contact the Ally representative in the signature of the letter if any further questions or concerns.

100.    A.J. attempted three or more times to reach the individual and left him voicemails that all went unanswered and unreturned.

101.    The October 2021 Ally correspondence further states that Ally has accepted the contract from Del Toyota and has paid Del Toyota for the automobile and has since then assigned the debt and or contract to another Ally entity and or trust.

## VIII.   Fair Credit Reporting Act Violations

102.    Plaintiffs filed an FTC Identity Theft Report for the unauthorized use of their identities and notified and provided it to the CRAs whom notified Ally of the same.

103.    Ally continues to report to one or more credit reporting agency of the account with derogatory information of:

       a.       2 payments made in 2021;

       b.       over 90 past-due; and

       c.       a balance of around $18,000.00;

104.    Plaintiffs however did not make any payments to Ally.

105.    Ally refuses to repossess the vehicle, which has been parked and with no New Jersey registration for years now.

106.    Plaintiffs last attempted to communicate with Ally on about August 2023 to inquire on the status of an FCRA request that was sent to Ally on about May 2023.

107.    That FCRA request was made under section 609(e) to ascertain information and business records relating to the creation of fraudulent accounts through identity theft and was mailed to the address Ally provided to the CRAs for this account.

108.    Ally intentionally chose to disregard its obligations to respond to that FCRA request and withheld the business records to thwart Plaintiffs efforts to investigate.

109.    Ally willfully continues to report inaccurate information monthly to the CRAs.

110.    During that August 2023 call, the Ally representative stated to A.J.:

      a.    Ally will not respond to Plaintiffs' May 2023 FCRA request or any other FCRA requests;

      b.    that she will not confirm or provide the address to mail FCRA requests;

      c.    that Ally will not have any communications with Plaintiffs; and

      d.    that Plaintiffs must initiate legal action in court as the only means to communicate.

## DAMAGES

111.    Defendants' outrages and reprehensible actions, individually and jointly, caused damages and harm to Plaintiffs, including but not limited to, the debt of the Ally account; and costs of operating in excess and accelerating the depreciation of their existing vehicle of approximately $20,000.00 (based on IRS mileage standards); and defamation, emotional distress, and loss of enjoyment of life.

112.   Knowing the high probability that their actions would harm Plaintiffs the Defendants actions were with malice and or willful and with wanton disregard.

113.   Plaintiffs seek compensatory damages, statutory treble damages, and punitive damages, per defendant, in addition to any and all other relief available to this Court.

## COUNT ONE

## AGGRAVATED IDENTITY THEFT IN VIOLATION OF 18 U.S.C. § 1028

*Against DEL TOYOTA, LOPEZ, AND KARKOSKA*

114.   Plaintiffs repeat the allegations 1- 113 as if fully set forth herein at length.

115.   Defendants to this count, on or about April 29, 2021, knowingly transferred to Ally the personal identifying information of A.J. and R.S.

116.   Defendants did so without authorization or knowledge of Plaintiffs.

117.   Defendants did so during and in relation to committing one or more violations of Chapter 63, including §1344 (Bank Fraud) and §1341 (Mail Fraud) and §1343 (Wire Fraud).

118.   Defendants did so with the intention to injure Plaintiffs and obtained a benefit for themselves and or others.

## COUNT TWO

## FORGERY

*Against ALL Defendants*

119.   Plaintiffs repeat the allegations in Count I as if fully set forth herein at length.

120.   On about April 26, 2021 Del Toyota, by and through its employees, communicated in writing to Plaintiffs that they have canceled the contemplated transaction.

121.   On or about April 29th, 2021 Karkoska and or Lopez as agents and or employees of Del Toyota transmitted to Ally an automobile retail installment contract and or computer data

containing similar information for the purpose of creating, making, executing, and or completing an Ally SmartLease for a 2021 Toyota Sienna and its debt in the identities of A.J. and R.S.

122.    The transmission contained personal identification information of A.J. and R.S as defined by 18 U.S.C. §1028.

123.    Lopez and Karkoska, acting on their own and or on behalf of Del Toyota, schemed with DOE 1 a/k/a Ally.Del.Rep, an employee of Ally Financial Inc., to "*push through*" the creation of the Ally account and its debt in Plaintiffs' identities.

124.    Neither the 'First Set' or 'Second Set' contracts were delivered to Del Toyota or authorized by Plaintiffs to be transferred, transmitted, made, executed, and or completed.

125.    Del Toyota knowingly misrepresented throughout the controversy one or more times the true order of the 'First Set' and 'Second Set' contracts.

126.    Del Toyota knowingly misrepresented throughout the controversy one or more times the validity of the contract they purported to be valid.

127.    The Defendants involved all gained monetary and non-monetary benefits.

128.    The contract uttered was done so without authorization or knowledge of Plaintiffs and was done so for the personal gain and benefit of defendants and to injure Plaintiffs.

129.    Del Toyota's outrageous conduct was retaliatory and done willfully, with malice, and reckless disregard to the harm caused.

130.    Ally's conduct was willful and with reckless disregard to the harm caused.

131.    Toyota's conduct was willful and with reckless disregard to the harm caused.

132.    Defendants conduct constitutes a violation of N.J.S.A. 2C:21-1(a)(1) in that Del Toyota and or Ally altered and or changed a writing of Plaintiff's without their authorization.

133.    Defendants conduct constitutes a violation of N.J.S.A. 2C:21-1(a)(2), in that Del Toyota and Ally made, completed, executed, authenticated, issued or transferred a writing without authorization.

134.    Defendants conduct constitutes multiple violations of N.J.S.A. 2C:21-1(a)(3), in that Del Toyota and Ally uttered a writing, each, and in one or more times each.

## COUNT THREE

## MAIL FRAUD

*Against ALL Defendants*

135.    Plaintiffs repeat the allegations contained in the preceding paragraphs as though set forth in full herein.

136.    On about April 29, 2021 Lopez and or Karkoska acting on behalf of Del Toyota caused Ally to use the United States Mail to send one or more communications to Plaintiffs in New Jersey about the creation of the subject account in Plaintiffs' identities.

137.    The defendants relied on the Ally communication to notify Plaintiffs, in so that Plaintiffs rely on the misrepresentation of the validity of the contract.

138.    Ally further used the United States Mail multiple times throughout the controversy in furtherance of the fraudulent scheme.

## COUNT FOUR

## BANK FRAUD IN VIOLATION OF §1344

*Against DEL TOYOTA, LOPEZ, KARKOSKA*

139.    Plaintiffs repeat the allegations contained in the preceding paragraphs as though set forth in full herein.

140.     Defendants knowingly submitted to a financial institution documents that are known to be of a forgery.

141.     Defendants did so for personal gain and benefit and in violation of other statutes to intentionally defraud and to cause harm to Plaintiffs in wanton disregard.

## COUNT FIVE

## VIOLATIONS OF

## THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

*Against ALL Defendants*

142.     Plaintiffs repeat the allegations contained in the preceding paragraphs as though set forth in full herein.

143.     Plaintiffs bring forth this count under both federal and state civil RICO statutes.

144.     Defendants together constitute an enterprise within the meaning of N.J.S.A. 2C:41-l(c) and 18 U.S.C. § 1961(4).

145.     The Enterprise Defendants engage in trade or commerce, or in activities which affect trade or commerce and received income directly from the pattern of racketeering activity and used the income or its proceeds.

146.     The Enterprise Defendants are persons within the meaning of N.J.S.A. 2C:41-1(b) and 18 U.S.C. § 1961(3).

147.     The Enterprise Defendants were either employed by or associated with each other, and conducted or participated, directly or indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) and 18 U.S.C.§ 1961(5).

148.    A pattern of racketeering activity includes two or more incidents of racketeering conduct that have "either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41-1(d) and 18 U.S.C.§ 1961(5).

149.    The Enterprise Defendants created and attempted to collect an unlawful debt as defined by N.J.S.A 2C:41-1(e).

150.    The Enterprise Defendants participated in crimes which had the same or similar purposes, results, participants, victims or methods of commission and were otherwise interrelated by distinguishing characteristics and were not isolated incidents, including § 1028 and § 1341 and § 1343 and § 1344.

151.    The crimes perpetrated by the Enterprise Defendants in furtherance of the pattern of racketeering activity include:

    a.    Forgery: N.J.S.A. 2C:21-1. By executing, authenticating and transferring unauthorized contracts of sale and other writings which purport to be the acts of Plaintiffs, and with the knowledge that fraud or injury is being perpetrated by another, Defendants violated N.J.S.A. 2C:21-1;

    b.    Fraudulent misrepresentation to the State of New Jersey. By submitting forged documents and or making a fraudulent declaration or statement to the State of New Jersey on an official application of a motor vehicle.

    c.    Impersonation: N.J.S.A. 2C:21-17(a)(1). By assuming false identities and acting in such characters for the purpose of obtaining a benefit for others and to defraud another.

     d.      Violations of 12 CFR 1006.18. By using false representations or deceptive means to collect or attempt to collect a debt.

     e.      Theft By Deception. By creating a false impression to law and failing to correct a false impression the deceiver previously created or reinforced where a fiduciary relationship exists.

     f.      Aiding & Abetting Aggravated Identity Theft.

     g.      Unjust Enrichment. Defendant Del Toyota received from Ally about $45,000.00 or more as Ally had admitted to funding the deal in their October 2021 letter to Plaintiffs.

     h.      36 of violations of Mail & Wire Fraud: Defendant Ally transmitted each month to CRAs inaccurate information, in willful violation of the FCRA and used the U.S. Mail six or more times to further the scheme.

152.     The Enterprise Defendants have conspired with and amongst themselves and others to violate the provisions of N.J.S.A. 2C:41-2 and 18 U.S.C § 1962(d).

**COUNT SIX**

**BREACH OF FIDUCIARY DUTY**

*Against DEL TOYOTA, LOPEZ, KARKOSKA*

153.     Plaintiffs repeat the allegations contained in the preceding paragraphs as though set forth in full herein.

154.     Defendant Del Toyota had an obligation to protect and properly dispose of Plaintiffs' personal identifying information.

155.    Defendant Karkoska specifically even stated on April 3, 2021 that she took and kept the First Set contracts as she was required to destroy them due to Plaintiffs' personal identifying information it contained.

156.    Defendant did not do so and then allowed for that information to be used without authorization causing harm to Plaintiffs.

**COUNT SEVEN**

**AIDING & ABETTING BREACH OF FIDUCIARY DUTY**

*Against JOHN DOE 1 & ALLY FINANCIAL, INC.*

157.    Plaintiffs repeat the allegations contained in the preceding paragraphs as though set forth in full herein.

158.    Defendant JOHN DOE 1, and employee of Ally Financial, on or about April 29, 2021, agreed to assist Del Toyota in the unauthorized use of Plaintiffs' personal information.

159.    Defendants, to this count, acts constitute aiding and abetting in breach of a fiduciary duty.

160.    Plaintiffs as a result of Defendants acts were harmed.

**COUNT EIGHT**

**BREACH OF FIDUCIARY OR SPECIAL DUTY**

*Against JOHN DOE 1 & ALLY FINANCIAL*

161.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein at length.

162.    Ally established a relationship with Plaintiffs when it opened the account in their names with address, date of birth and social security numbers.

163.    The injury to plaintiff was foreseeable: the identity theft, the fraudulent scheme and the resulting injury and the harm it caused Plaintiffs were foreseeable.

## COUNT NINE

## COMMON LAW FRAUD

*Against ALL DEFENDANTS*

164.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth at length.

165.    Defendants' acts constitute common law fraud.

166.    Plaintiffs had no reason to doubt Del Toyota's statements.

167.    Defendants intended reliance on the misrepresentations communicated through Ally and knew that the misrepresentations were in fact false.

168.    Defendants thwarted Plaintiffs efforts to investigate the facts.

169.    Defendants acted intentionally, willfully, wantonly, maliciously, and for profit.

170.    Plaintiffs have been damaged as a result.

## COUNT TEN

## UNCONSCIONABLE PRACTICES IN VIOLATION OF THE CFA

*Against ALL DEFENDANTS*

171.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein at length.

172.    The CFA prohibits:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression

or omission, in connection with the sale or advertisement of any merchandise....[N.J.S.A. 56:8-2.]

173.    Plaintiffs each is a "person" as defined by the CFA.

174.    Defendant Ally Financial is a "person" as defined by the CFA.

175.    Defendant Toyota Motor Sales is a "person" as defined by the CFA.

176.    Defendant Del Toyota is a "person" as defined by the CFA.

177.    At varying times, the Defendants, acting through their agents, employees, and or representatives, including the Individual Defendants, have engaged in unconscionable business practices and deception, including but not limited to the following:

a.  One or more violations of the Consumer Leasing Act (15 U.S.C. § 1601);

b.  Used high pressure sales tactics;

c.  Misrepresented the validity of the Ally Lease Contract;

d.  Fraud in the Execution;

e.  Forgery;

f.  Fraudulent Concealment;

g.  Breach of Fiduciary Duty;

h.  Aiding & Abetting Fraud;

i.  Aiding & Abetting Breach of Fiduciary Duty;

j.  Misrepresenting their capacity to act in Plaintiffs' names.

k.  Misrepresenting the true terms of the offer;

l.  Aggravated Identity Theft;

m.  Causing Plaintiffs to seek warranty repair with New Jersey Toyota Dealers;

n.  Failing to respond to consumer complaints;

o.  Failing to respond to consumer inquiries regarding a refund;

p.  Presenting preprinted form contracts which did not reflect accurate and complete truth to their contents;

q.  Conducting business under an assumed name that is not registered;

r.  Failure to provide a signed copy of contracts;

s.  Bank Fraud in Violation of §1344;

t.  Dozens of violations of Mail & Wire Fraud;

u.  Willful noncompliance of the FCRA;

v.  Failure to cooperate with investigations.

178.   At varying times, each of the Defendants engaged in conduct to advance the common enterprise and the violations of the CFA.

179.   Each unconscionable commercial practice and or act by Defendants constitutes a separate violation of the CFA, N.J.S.A. 56:8-2

180.   The CFA violations caused an ascertainable loss of money or property proximately caused by the misconduct.

181.   The certification submitted with this pleading satisfies the compliance requirements of notice, as it was rendered.

## COUNT ELEVEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*Against DEL TOYOTA, LOPEZ, AND KARKOSKA*

182.   Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set forth herein at length.

183.   In engaging in the actions set forth and previously incorporated by reference in this Count, Defendants committed extreme and outrageous conduct.

184.   Defendants acted with the intent to cause Plaintiffs great emotional distress and or recklessly in deliberate disregard of Plaintiffs' well-being and the likelihood that their conduct would cause Plaintiffs emotional distress.

185.   As a result of Defendants' extreme and outrageous conduct, Plaintiffs suffered harm including severe emotional distress manifesting itself as both physical and psychological symptoms.

## COUNT TWELVE

## WILLFUL NONCOMPLIANCE IN VIOLATION OF 15 USCS § 1681n

### *Against ALLY FINANCIAL*

186.   Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set for herein at length.

187.   Ally knowing that the account was fraudulent still continued to communicate to CRAs inaccurate information to the date of this filing.

188.   Ally willingly chose to disregard its obligations under the FCRA and not respond to Plaintiffs FCRA demands.

189.   Ally willingly failed to investigate and or maintain required compliance and internal controls as required by the FCRA.

190.   Ally's actions violated 15 USCS §1681n and caused Plaintiffs harm and damage.

## COUNT THIRTEEN

## GROSS NEGLIGENCE

### *Against ALLY* & TOYOTA

191.   Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully set for herein at length.

192.    Defendants', to this count, acts, failure to act, and or omissions throughout the
controversy were willful and reckless.

193.    Plaintiffs have been injured as a result.

194.    Defendants' willful acts and omissions constitute Gross Negligence.

### COUNT FOURTEEN

### VICARIOUS LIABILITY

*Against ALLY, TOYOTA, AND DEL AUTOMOTIVE*

195.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully
set for herein at length.

196.    Defendant Toyota is liable for the actions of its agent Del Automotive.

197.    Defendant Ally is liable for the actions of its agent Del Automotive.

198.    Defendants ALLY, TOYOTA, and DEL TOYOTA are each liable for the actions
of their employees, including individual liability to the officers of the corporate defendants.

### COUNT FIFTEEN

### COMPLICITY – N.J.S.A § 2C:2-6

*Against ALLY, TOYOTA, AND DEL AUTOMOTIVE*

199.    Plaintiffs repeat the allegations contained in the preceding paragraphs as if fully
set for herein at length.

200.    Defendant Toyota is liable for the actions of its agent Del Automotive.

201.    Defendant Ally is liable for the actions of its agent Del Automotive.

202.    Defendants ALLY, TOYOTA, and DEL TOYOTA are each liable for the actions
of their employees, including individual liability to the officers of the corporate defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based upon the foregoing, Plaintiffs pray for judgment against Defendants as to all counts, jointly and or severally, as follows:

(1) Actual and compensatory damages in an amount to be determined at trial;

(2) statutory treble damages in accordance to N.J.S.A 2C:21-17.4;

(3) statutory treble damages in accordance to N.J.S.A 2A:32-1;

(4) a finding of unjust enrichment and awarding treble damages of the gains acquired through the RICO violations.

(5) ordering the forfeiture of the subject vehicle in accordance to N.J.S.A 2C:41-2;

(6) an award of $1,000 for each per se violation of the FCRA for willful noncompliance;

(7) a finding that the acts and practices engaged in by the Defendants constitute multiple instances of unlawful practices in violation of the CFA and award damages and statutory treble damages;

(8) a finding of special damages, liquidated damages, and consequential damages;

(9) multiple awards of punitive damages against each of the defendants cumulative in accordance with each statute and or Act violated in this matter;

(10) an order by this Court permanently enjoining the Defendants and their owners, officers, directors, managers, agents, servants, employees, representatives, independent contractors and all other persons or entities directly under their control, from engaging in, continuing to engage in, or doing any acts or practices in violation of the acts and practices alleged in this Complaint;

(11) awarding any and all remedies provided for under common law and or state and or federal statutes pled herein or applicable to this case; and

(12) such other further relief as this Court shall deem equitable and just.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on any and all claims for which adjudication by jury may be appropriate.


Dated: February 15, 2024,

By:

AHMED JAMAL
Pro Se

94 Wanaque Ave #1025
Pompton Lakes, NJ 07442
ajandrs75@gmail.com
(201) 416-9441


REEM SUQI
Pro Se

94 Wanaque Ave #1025
Pompton Lakes, NJ 07442
ajandrs75@gmail.com
(201) 416-9441

2024 FEB 15 P 12: 51
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
CLERK