**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMED JAMAL and REEM SUQI, <br><br> Plaintiffs, <br><br> v. <br><br> ALLY FINANCIAL, INC., *et al.*, <br><br> Defendants. | Case No. 2:24-cv-00894 (BRM) (JBC) <br><br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendant[1] Toyota Motor Sales, USA, Inc.'s ("TMS") Motion to Dismiss (ECF No. 16) and Defendants Del Automative Inc. d/b/a Del Toyota ("Del Toyota"), James Lopez ("Lopez"), Heather Karkoska ("Karkoska"), and Jack Delvecchio's ("Delvecchio") (collectively, the "Del Toyota Defendants") Motion to Dismiss (ECF No. 18) *pro se* Plaintiffs Ahmed Jamal ("Jamal") and Reem Suqi's[2] (collectively, "Plaintiffs") Complaint (ECF No. 1)

---

[1] Plaintiffs have also named XYZ Companies 1-10 and John and Jane Does. 1-20 in their Complaint. Named Defendants' briefings do not purport to speak for the XYZ Corps. or John and Jane Does named in this matter. (ECF No. 1.) Because these parties have not appeared or been identified, this Opinion does not determine whether Plaintiffs are entitled to relief against them.

Additionally, Plaintiffs have named Ally Financial Inc. ("Ally") as a Defendant. Ally filed an Answer and Affirmative Defenses to the Complaint. (ECF No. 26.) To the extent Plaintiffs have made claims against Ally either individually or collectively with other Defendants, this Opinion does not determine whether they are entitled to relief against Ally. However, for claims being dismissed here due to being time barred or because there is no private right of action, *see infra*, such dismissal is effective against Ally.

[2] Reem Suqi is a Named Plaintiff and described as "a New Jersey resident, [who] was a co-applicant for the same retail credit application with [Jamal]." (ECF No. 1 at 3.) The Complaint attributes many actions to Jamal specifically, while at times discussing both Plaintiffs collectively.

pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs filed an Opposition to the Del Toyota Defendants' Motion on June 3, 2024 (ECF No. 28) and to TMS's Motion on June 24, 2024 (ECF No. 30). TMS filed a Reply on July 19, 2024. (ECF No. 38.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, TMS's Motion to Dismiss (ECF No. 16) is **GRANTED** and the Del Toyota Defendants' Motion to Dismiss (ECF No. 18) is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

For the purpose of these Motions to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises from a disputed contract and alleged unauthorized loan pertaining to the lease of a vehicle. (ECF No. 1 at 2.) On about March 29, 2021, Plaintiffs responded to an advertisement by Del Toyota. (*Id.* at 6.) Plaintiffs claim the Del Toyota Defendants provided two different sets of contracts, a March set and a revised April set, which "[were] then rescinded in writing by the seller" before being executed. (*Id.* at 2.) Plaintiffs received the initial contract by mail, but "advised multiple Del Toyota[] representatives that there were issues in the terms of the contracts. . . ." (*Id.* at 6–8.) Given these issues, Jamal met with Karkoska, who "generated a new set of documents and contracts" after they had "discuss[ed] and chang[ed[ the terms of the offer."

2

(*Id.* at 8.). As of April 26, 2021, Plaintiffs state they never "execute[d], ma[de], and or complete[d] the necessary 'Second Set' contracts", but they did issue a check for the initial cash due to Del Toyota and a "Spot Delivery" of the vehicle occurred. (*Id.* at 9–10.) Plaintiffs contend the car had mechanical issues due to a manufacturer defect, because of which they decided to not complete the paperwork. (*Id.* at 10–11.) This ultimately led to the Del Toyota Defendants allegedly withdrawing the entire offer on April 26, 2021, and not refunding the cash already paid when requested. (*Id.*) Thereafter, Plaintiffs were unable to get in touch with any of the Del Toyota Defendants, including via email and text messages. (*Id.* at 11.) Jamal then decided to contact Toyota's national customer service line, *i.e.* TMS, on April 30, 2021, to report what had occurred. (*Id.*) Plaintiffs allege it was during this period of ignoring Plaintiffs' communications that the Del Toyota Defendants fraudulently conspired with Ally to issue an auto loan in connection with the ultimately unexecuted and failed lease. (*Id.* at 12.) Plaintiffs learned about said auto loan via U.S. Mail from Ally on about May 5, 2021. (*Id.*) Upon receiving this mail notification, Jamal called Del Toyota and spoke with one of the Defendants. (*Id.* at 12–13.) Plaintiffs state Del Toyota, through Lopez speaking with Jamal, reversed the canceled contract by acting as if it was never withdrawn, admitted to fraud, and to having "push[ed] through" the Ally loan account. (*Id.* at 13). Jamal then reached out to Ally in order to dispute the allegedly fraudulent loan account. (*Id.* at 13–14.) After Ally maintained a "position of upholding the unauthorized account," Plaintiffs filed an FTC Identity Theft Report asserting Ally "continues to report to one or more credit reporting agency of the account with derogatory information" despite his numerous phone calls and emails concerning the fraud, especially since no payments have been made. (*Id.* at 16–17.) Plaintiffs claim Ally "refuses to repossess the vehicle, which has been parked and with no New Jersey Registration for years now."

3

On February 15, 2024, Plaintiffs filed the Complaint alleging the following causes of action:[3] (1) Aggravated Identify Theft in Violation of 18 U.S.C. § 1028 against the Del Toyota, Lopez, and Karkoska (Count I); (2) Forgery against all Defendants (Count II); (3) Mail Fraud against all Defendants (Count III); (4) Bank Fraud in Violation of 18 U.S.C. § 1344 against Del Toyota, Lopez, and Karkoska (Count IV); (5) Violations of the federal and state civil RICO statutes, 18 U.S.C. § 1961 and N.J. Stat Ann. § 2C:41, respectively, against all Defendants (Count V); (6) Breach of Fiduciary Duty against Del Toyota, Lopez, and Karkoska (Count VI); (9) Common Law Fraud against all Defendants (Count IX); (10) Unconscionable Practices in Violation of the Consumer Fraud Act ("CFA") against all Defendants (Count X); (11) Intentional Infliction of Emotional Distress against Del Toyota, Lopez, and Karkoska (Count XI); (13) Gross Negligence against Ally and TMS (Count XIII); (14) Vicarious Liability against Ally, TMS, and Del Toyota (Count XIV); and (15) Complicity in violation of N.J. Stat Ann. § 2C:2-6 against Ally, TMS, and Del Toyota (Count XV).

On April 23, 2024, TMS filed its Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). (ECF No. 16.) On May 2, 2024, the Del Toyota Defendants filed their Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6). (ECF No. 18.) On June 3, 2024, Plaintiffs filed an Opposition to the Del Toyota Defendants' Motion (ECF No. 28), and, on June 24, 2024, Plaintiffs filed an Opposition to TMS's Motion (ECF No. 30). On July 19, 2024, TMS filed a Reply to Plaintiffs' Opposition to its Motion to Dismiss. (ECF No. 38.)

---

[3] Only the claims against TMS and the Del Toyota Defendants are addressed in this Opinion. Accordingly, the Counts solely against Ally and/or any unnamed defendant are not detailed in this section. Any Count with Ally and TMS or Ally and any of the Del Toyota Defendants is detailed in the causes of action appropriately.

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual

claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

### III.   DECISION

#### A.  Counts Against Delvecchio

The Court finds all Counts against Delvecchio should be dismissed. Plaintiffs name him as an individual Defendant, who is a "corporate officer of DEL TOYOTA and has controlled, directed, and /or participated in the management and operation of Del Toyota; and has participated in, managed, controlled, and/or facilitated the unlawful acts alleged in this Complaint and subject to other liabilities." (ECF No. 1 at 5.) However, this is the only time he is explicitly named. The Complaint details multiple interactions with Lopez and Karkoska in its fact section and identifies them explicitly in various Counts. (*See* ECF No. 1.) In sharp contrast, Delvecchio is only included in the Counts where "All Defendants" are listed and never included in any claim as individually violating a law. (*See id.*) For example, Plaintiffs detail sending "via email and certified mail to Ally, Del Toyota, Lopez, and Karkoska a Notice of Intent and Preservation Notice," but do not mention sending an email or letter to Delvecchio. (*Id.* at 16.) The mere fact that he is alleged to be an officer of Del Toyota and to have had some control or participation in the franchise's operation is not enough to survive a motion to dismiss. Indeed, while the Court must accept the factual allegations in the Complaint as true and draw all inferences in the light most favorable to Plaintiffs, a case where there are simply no facts provided at all cannot be allowed to proceed. *See Phillips*, 515 F.3d 224 at 228.

Accordingly, Delvecchio's Motion to Dismiss the Complaint is **GRANTED**.

#### B.  Time-Barred Claim

TMS argues that, to the extent Plaintiffs are claiming it is liable for Intentional Infliction of Emotional Distress, the Count should be dismissed due to being barred by the statute of limitations. (ECF No. 16 at 15.) It likewise claims any allegations of defamation or loss of

enjoyment are also time barred. (*Id.*) Plaintiffs' Opposition fails to argue against such limitations. (*See* ECF No. 30.) The Del Toyota Defendants, who Plaintiffs explicitly claim in Count XI to have intentionally inflected emotional distress, argue the Count "must be dismissed because the economic loss rule precludes tort claims for harm that is the subject of a contract." (ECF No. 18-1 at 7.) Plaintiffs contend they "are not suing on the performance of a contract, rather the fraudulent execution and other causes of action and theories[.]" (ECF No. 28 at 4.)

An analysis on whether preclusion is warranted under such grounds is unnecessary because N.J. Stat Ann. § 2A:14-3 states the statute of limitations for claims for defamation is one year. Likewise, claims for "infliction of emotional distress are governed by the two-year statute of limitations contained in N.J.S.A. 2A:14–2." *Fraser v. Bovino*, 721 A.2d 20, 25 (N.J. Super. App. Div. 1998). Plaintiffs' Complaint details numerous events giving rise to all claims as occurring in March and April 2021. (*See generally* ECF No. 1.) Plaintiffs state they received certain information or were in contact with various Defendants in July and October 2021, meaning the tolling for their claims should start no later than this period. Since this lawsuit was not filed until February 15, 2024, roughly two and a half years after Plaintiffs were aware of the events their claims stem from, Count XI is time barred.

Accordingly, the Del Toyota Defendants' Motion to Dismiss Count XI is **GRANTED**.

### C.  Claims Against TMS

#### 1.  Agency

TMS argues Plaintiffs have failed to plead an agency relationship or any other grounds that could support a claim for vicarious liability. (ECF No. 16 at 8.) TMS goes as far as stating there are "virtually non-existent allegations" against TMS and Plaintiffs' claim that Del Toyota is its agent is false. (*Id.*) Plaintiffs' Complaint does not provide many details regarding TMS beyond

alleging Jamal contacted the national customer service line on April 30, 2021 to "advise them of the matter." (ECF No 1. At 11.) Plaintiffs' Opposition, however, states TMS was "directly involved in the matter." (ECF No. 30 at 2.) Specifically, they claim TMS provided financial motive "to keep the backdating of the paperwork, failed to act when required to do so and instead conspired to conceal, benefited from the fraudulent transaction, failed to respond to consumer complaints and investigations, and failed to hold itself the brand it[] purports and advertises to be to the public." (*Id.*) They also contend TMS misled the public. (*Id.*) As support, Plaintiffs describe: (1) the "TMS Distributor Agreements" filed with the SEC, which Plaintiffs claim designate explicit TMS control over franchises, (2) Del Toyota employees mentioned TMS had provided "special financial incentive" to the dealership, and (3) the fact that Del Toyota and its inventory is listed on the TMS website. (ECF No. 30 at 2–3.) In its Reply, TMS refutes such characterizations and maintains its position that Del Toyota is an independent franchise. (ECF No. 38 at 2–3.)

Importantly, many of Plaintiffs' arguments that purport to demonstrate an agency relationship cannot be considered by the Court at this juncture. Since such factual allegations were not included in the Complaint, they cannot now be considered when assessing the sufficiency of Plaintiffs' claims. *See Frederico v. Home Depot*, 507 F.3d 188, 201–02 (3d Cir. 2007) (noting that courts "do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)"); *Marino v. Westfield Bd. of Educ.*, Civ. A. No. 16-00361, 2017 WL 216691, at *7 (D.N.J. Jan. 18, 2017) ("Plaintiff raises several new facts in its brief that purport to establish actual malice, but these new facts can have no place in the Court's 12(b)(6) analysis."); *Pue v. N.J. Dep't of Labor*, Civ. A. No. 23-855, 2023 WL 5671561, at *4 n.8 (D.N.J. Sept. 1, 2023) ("While the Court construes Plaintiff's Amended Complaint liberally, the Court cannot consider new facts presented for the first time in opposition."). As such, the only information to which this

Court can refer are the allegation that Plaintiffs via Jamal contacted TMS after many of the events mentioned in the Complaint occurred, and the allegation that TMS never "reach[ed] back out to plaintiffs." (ECF No. 1 at 12.) Beyond these factual allegations, many of the statements in the Complaint are legal conclusions, such as: (1) "Toyota's conduct" being "willful and with reckless disregard to the harm caused" (Count II); (2) TMS is a "'person' as defined by the CFA" and "[a]t varying times, the Defendants acted through their agents" (Count X); (3) "Defendants' willful acts constitute Gross Negligence" (Count XIII); and (4) TMS "is liable for the actions of its agent Del Automotive" (Counts XIV and XV). (*See* ECF No. 1.)

An agency relationship is created only when one party, the principal, consents to have another, the agent, act on its behalf, with the principal controlling and directing the acts of the agent throughout the relationship. *Goodman v. Goldman, Sachs & Co.*, CIV. A. No. 10-1247, 2010 WL 5186180, at *9 (D.N.J. Dec. 14, 2010). Such a relationship may be based on actual agency or apparent agency. *Id.* No matter which of the two kinds is alleged, a plaintiff must provide sufficient facts and "may not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability." *TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC*, CIV. A. No. 12-3355, 2013 WL 1223643, at *3–4 (D.N.J. Mar. 25, 2013); *Goodman*, 2010 WL 5186180, at *9 (granting motion to dismiss allegations of agency relationship based on insufficient pleadings*); Payan v. Greenpoint Mortg. Funding, Inc.*, CIV. A. No. 08-6390 NLH KMW, 2010 WL 5253016, at *6 (D.N.J. Dec. 17, 2010) (same).

To establish a claim of actual authority, a plaintiff must show "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *TBI*, 2013 WL 1223643, at *3–4. For a claim of apparent agency to succeed, the plaintiff must indicate there

was a manifestation by the principal upon which the plaintiff reasonably relied to his detriment. *Goodman*, 2010 WL 5186180, at *9. Likewise, in order for any claim of vicarious liability to succeed, a master-servant relationship must be established for there to be *respondeat superior*. *Carter v. Reynolds*, 815 A.2d 460, 463 (N.J. 2003). *Carter* "recognize[d] Section 220 of the Restatement (Second) of Agency as the touchstone for determining who is a servant." 815 A.2d at 464. Section 220 provides numerous factors to weigh in assessing whether a relationship is more accurately characterized as one of agency or instead that of an impendent contractor, the most relevant being "the extent of control which, by the agreement, the master may exercise over the details of the work" and "whether or not the parties believe they are creating the relation of master and servant." Restatement (Second) of Agency § 220 (1958).

Plaintiffs have failed to establish a master-servant relationship, in this case a franchisor-franchisee relationship, between TMS and any of the Del Toyota Defendants, which is necessary for TMS to be liable for the Del Toyota Defendants' actions. Since many of the allegations providing more nuanced information cannot be considered by the Court, the sparse factual allegations included in the Complaint are not sufficient to determine that any agency relationship exists. As such, any current claims against TMS predicated upon the Del Toyota Defendants' individual and collective actions cannot proceed.[4]

---

[4] Although not being determined today, the Court is skeptical that the allegations not being considered would prove sufficient in an amended complaint given the intricacies of the franchisor-franchisee relationship. *See Burnette v. Hilton Franchise Holdings LLC*, CIV. A. No. 17-12128, 2021 WL 118924, at *8 (D.N.J. Jan. 13, 2021) ("While some degree of control is inherent in the franchisor-franchisee relationship, 'the mere existence of a franchise relationship does not necessarily trigger a master-servant relationship, nor does it automatically insulate the parties from such a relationship.'") (citing *Drexel v. Union Prescription Centers, Inc.*, 582 F.2d 781, 786 (3d Cir. 1978)).

Accordingly, TMS's Motion to Dismiss Counts II, X, XIII, XIV, and XV, as well as any other Count based upon an agency claim is **GRANTED**.

### 2. Pleading of any Direct Cause of Action Against TMS

TMS argues that beyond Plaintiffs' failure to plead an agency relationship, they have also failed to include sufficient facts to determine direct liability for any cause of action. (ECF No. 16 at 13.) Additionally, TMS calls into question Plaintiffs' Opposition, stating "it does not respond to TMS's grounds for dismissing Plaintiffs' claims against TMS for forgery, mail fraud, violations of the state and federal RICO statutes, fraud, gross negligence, defamation, emotional distress, and loss of enjoyment of life" and that "[t]hese claims and theories of recovery therefore should be dismissed and/or stricken." (ECF No. 38 at 6.) As has been previously explained, *supra* Section (III)(C)(1), Plaintiffs assert in the Complaint that TMS has taken no action since Jamal contacted the national customer service to report the numerous allegations of fraud and various torts purportedly committed by the Del Toyota Defendants. (ECF No. 1 at 12.) Plaintiffs state calling TMS occurred *"during* the time Del Automative was carrying out the fraud and conspiracy," which meant "TMS could have exercised its control over Del Automative to stop it before damage was done to Plaintiffs." (ECF No. 30 at 2.) Because such allegations were first introduced in the Opposition, they cannot be considered. At this time, the lack of information leaves all of Plaintiffs' claims against TMS as entirely conclusory statements alleging violations, especially given the Court's determination that the current pleadings are insufficient to support liability through agency law.

Accordingly, TMS's Motion to Dismiss the remaining Counts against them, III, V, and IX, is **GRANTED**.

### D.  Claims with No Private Right of Action

Both TMS[5] and the Del Toyota Defendants argue Plaintiffs do not have standing to sue for Counts I, II, III, IV, and XV because the corresponding statutes do not provide for a private right of action. (ECF Nos. 16 at 9, 18-1 at 9.) In Plaintiffs' Opposition to the Del Toyota Defendants' Motion, they acknowledge there is no standing to pursue some of the claims, but nevertheless maintain "Plaintiffs sufficiently have plead the elements of each through detailed facts and the statutes provide Plaintiffs a private right of action in a civil suit." (ECF No. 28 at 3.)

The Supreme Court has held a private right of action should not be inferred from a "bare criminal statute." *See Cent. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 190 (1994); *Yoder v. MacMain L. Grp., LLC*, 691 F. App'x 59, 60 (3d Cir. 2017) (finding "the statutes that Yoder cited do not give rise to a private cause of action"); *see also Suter v. Artist M.,* 503 U.S. 347, 363 (1992) (stating the party seeking to imply a private right of action bears the burden of showing Congress intended to make one available). Likewise, private parties are not able to compel enforcement of criminal laws. *See Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981).

The criminal statutes cited by Plaintiffs are 18 U.S.C. § 1028 (Aggravated Identity Theft), N.J. Stat Ann. § 2C:21-1 (Forgery), 18 U.S.C. § 1341 (Mail Fraud), 18 U.S.C. § 1344 (Bank Fraud), and N.J. Stat Ann. § 2C:2-6 (Complicity). None of these statutes provide for a private right of action allowing Plaintiffs to assert civil violations because they are either bare criminal laws, such as N.J. Stat Ann. § 2C:2-6, or courts have already determined they provide no standing for civil litigants. *See Cent. Bank of Denver*, 511 U.S. 164 at 190; *Jones v. TD Bank*, 468 F. App'x 93,

---

[5] In its Motion to Dismiss, TMS states in a footnote any free-standing causes of action alleged under criminal statutes, such as "forgery, mail fraud, or complicity," which are being asserted other than as a purported basis for RICO liability, must be dismissed due to there being no private right of action as a matter of law. (ECF No. 16 at 9.)

94 (3d Cir. 2012) (holding there is no private right of action for mail fraud); *Agcaoili v. Thayer*, 365 F. App'x 372, 376 (3d Cir. 2010) ("[T]here is no express private right of action for forgery under New Jersey law."); *Naprstek v. Ditech Financial LLC*, 2022 WL 2816898, at *4 (D.N.J. 2022) (holding no private action under bank fraud statute) (citing *Migrom v. Burstein*, 374 F. Supp. 2d 523, 529 (E.D. Ky. 2005)); *McCray v. UNITE HERE*, CIV. A. No. 13-6540, 2014 WL 3519098, at *7 (D.N.J. July 16, 2014) (holding no private right of action under 18 U.S.C. § 1028) (citing *Garay v. U.S. Bancorp*, 303 F.Supp.2d 299, 302 (E.D.N.Y. 2004)); *State v. Williams*, 623 A.2d 800, 805 (N.J. Super. App. Div. 1993) ("A careful reading of the accomplice liability statute as a whole evinces a careful legislative judgment to visit *criminal liability* upon an accomplice who purposely solicits, procures or aids another in the planning or commission of an offense by the perpetrator.") (emphasis added). Where no private right of action exists for a given claim, it cannot proceed.

Accordingly, the Del Toyota Defendants' Motion to Dismiss Counts I, II, III, IV, and XV is **GRANTED**.

### E. Remaining Counts Against the Del Toyota Defendants

The remaining Counts against the Del Toyota Defendants[6] will now be addressed inasmuch as they pertain to any of the three Defendants left in the collective group. These are Counts V (RICO), VI (Fiduciary Duty) IX (Fraud), X (CFA), and XIV (Vicarious Liability).[7]

#### 1. Arbitration

As an initial matter, the Del Toyota Defendants argue there is an arbitration agreement in place because the parties executed a valid contract with an arbitration provision. (ECF No. 18-1 at

---

[6] The remaining Del Toyota Defendants are Del Toyota, Lopez, and Karkoska. All Counts have been dismissed against Delvecchio. *See supra* Section (III)(A).

[7] Given the lack of agency and insufficient factual information in the Complaint regarding TMS's actions or lack thereof, no Counts remain against TMS.

2.) They provide a copy of the arbitration agreement, which is part of an allegedly executed Buyer's Order, as Exhibit A. (ECF No. 18-3.) Plaintiffs dispute the Buyer's Order, saying they did not attach such a document to the Complaint and this Court is not able to consider it. (ECF No. 28 at 2.) They note "[i]nterestingly, Defendants did not attach the alleged lease," and maintain "Plaintiffs vehemently challenge the authenticity of the agreements." (ECF No. 28 at 2–3.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides: "[a] written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C. § 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Morgan*, 596 U.S. at 418.

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol.,*

*L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (first citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and then citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)). "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022) (alteration in original) (quoting *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017)). "Therefore, 'if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract.'" *Id.* (quoting *Crawford v. Compass Grp. USA*, Civ. A. No. 14-02545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015)). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *Id.* (quoting *Glob. TelLink Corp*, 852 F.3d at 265).

    The attempt to compel arbitration by the Del Toyota Defendants fails. The Complaint does not include the agreement(s) introduced in the Motion to Dismiss, and Plaintiffs have consistently claimed no such contract was ever executed. (*See* ECF Nos. 1, 28.) Reiterating this point, they call the authenticity of the Buyer's Order into question. (ECF No. 28 at 3.) Since the document proclaiming to require arbitration is newly introduced and, most importantly, being disputed, arbitration cannot be ordered, especially when there does not appear to mutual assent by the parties on subjecting these claims to arbitration.[8]

---

[8] The Court also notes the Buyer's Order provided is difficult to read given the quality of the scanned document or due to another issue in its submission. The document does appear to have a notarized seal, but such notarization is not dated. At this juncture, the Court does not have anything confirming the document's authenticity in order to entertain an argument for arbitration.

Accordingly, arbitration cannot be compelled for any of Plaintiffs' claims.

**2.  RICO Claims Against the Del Toyota Defendants**

Plaintiffs claim civil violations of both federal and state RICO statutes (Count V) against all Defendants. (ECF No. 1 at 21.) They contend the "Defendants together constitute an enterprise" and "engage[d] in trade or commerce . . . and received income directly from the pattern of racketeering activity and used the income or its proceeds. (*Id.*) They state the "Enterprise Defendants were either employed by or associated with each other" and describe the pattern of crimes underlying the RICO allegation as forgery, "fraudulent misrepresentation to the State of New Jersey," impersonation, violations of 12 CFR 1006.18, theft by deception, aiding and abetting aggravated identity theft, unjust enrichment, and "36 violations of Mail & Wire Fraud." (*Id.* at 21–23.) Plaintiffs add that Defendants all conspired "with and amongst themselves" to violate the statutes. (*Id.* at 23.)

The Del Toyota Defendants argue Plaintiffs have insufficiently plead such RICO claims and, in any case, does not have standing to sue. (ECF No. 18-1 at 5.) They assert the enterprise element has not been met as "the Complaint simply alleges in conclusory fashion that all Defendants together constitute an enterprise. It offers no detail regarding the structure of the alleged enterprise. The Complaint fails to articulate how the Defendants work together to accomplish the enterprise's goals." (*Id.* at 5–6.) They further argue that, even if Plaintiffs have sufficiently alleged an enterprise, "the Complaint fails to allege how Moving Defendants participated in that enterprise." (*Id.* at 6.) Likewise, they state "Plaintiffs have not alleged a pattern of racketeering activity" nor have they asserted "any facts indicating the presence of a nexus between Moving Defendants and the alleged racketeering activity." (*Id.* at 7.) Plaintiffs' only response is that the elements have been sufficiently pled. (ECF No. 28 at 3.)

"The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). For a plaintiff to prove the existence of a RICO enterprise, he or she must show: "'(1) that the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the various associates function as a continuing unit; and (3) that the enterprise be separate and apart from the pattern of activity in which it engages.'" *McCullough v. Zimmer, Inc.*, 382 F. App'x 225, 231 (3d Cir. 2010) (quoting *United States v. Irizarry,* 341 F.3d 273 (3d Cir.2003)); *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (same). An essential feature of an association-in-fact enterprise is the sharing of a "common purpose" between the members. *United States v. Boyle*, 556 U.S. 938, 948 (2009). "From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the enterprise's purpose." *Id.* at 946. The Third Circuit has held that *Boyle*'s construction of the term "association-in-fact enterprise" is "capacious," "expansive," and "obviously broad." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 366 (3d Cir. 2010). Additionally, a valid RICO enterprise requires "defendants [to] conduct[] or participat[e] in the conduct of the 'enterprise's affairs,' not just their *own* affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (quoting 18 U.S.C. § 1962(c)).

Consistent with the *Iqbal-Twombly* standard, courts in this District have held plaintiffs must allege specific facts to support RICO claims. *See, e.g.*, *Palmer v. United States*, Civ. A. No. 21-11721, 2022 WL 310208, at *7 (D.N.J. Feb. 1, 2022). "To state a civil RICO claim, a plaintiff must plausibly allege the following elements: '(1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity.'" *Id.* (citing 18 U.S.C. § 1962(d)). Plaintiffs must describe how the alleged criminal enterprise was formed and what type of "predicate acts" the defendants took part in. *Id.* at *8. Under the RICO Act, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A "pattern of racketeering activity" requires at least two acts of racketeering activity as set forth in § 1961(a) within a ten-year period. 18 U.S.C. § 1961(5). Further, violations of statutes that are mentioned in "passing," or merely referenced in the complaint without factual support, are not sufficient to raise a claim. *Alexis v. Sessions*, Civ. A. No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).

"[I]n order to have standing to litigate a civil RICO claim, a plaintiff must show that she suffered an injury to her business or property and that the injury was proximately caused by the defendant's racketeering activities." *Palmer*, 2022 WL 310208, at *7 (citing *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 F. App'x 141, 145 (3d Cir. 2014)). The Third Circuit has held personal injuries do not qualify as RICO injuries to business or property. *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014). To adequately allege RICO injuries, a plaintiff must provide "proof of a concrete financial loss" and not mere "speculation" that future events might occur. *Maio v. Aetna, Inc.*, 221 F.3d 472, 483, 495 (3d Cir. 2000).

The Court finds Plaintiffs have standing to sue but fail to meet the enterprise requirement for a RICO claim. Plaintiffs have adequately demonstrated an injury has been suffered by the alleged racketeering activities, and therefore have standing to sue. Plaintiffs allege the damages are the "debt of the Ally account . . . [and] costs of operating in excess and accelerating the depreciation of their existing vehicle of approximately $20,000.00 (based on IRS Mileage standards)." (ECF No. 1 at 17.) They claim that Ally reports to "one or more credit reporting

agency . . . a balance of around $18,000.00." (*Id.* at 16.) Such damages are not "mere speculation" and are concrete enough to determine standing has been met. *See Maio*, 221 F.3d 472, 483, 495 (3d Cir. 2000).

In terms of the alleged enterprise, Plaintiffs state all Defendants were part of the RICO, which means TMS, Ally, and each of the Del Toyota Defendants (Del Toyota and the three individual employees of the franchise) were purportedly engaged in the illegal conduct and schemed together. (ECF No. 1 at 21.) Nowhere in the Complaint have Plaintiffs sufficiently alleged facts pertaining to any of the Del Toyota Defendants conspiring amongst each other nor with any other Named Defendant. The closest statement is "Lopez and Karkoska, acting on their own and or on behalf of Del Toyota, schemed with DOE 1 a/k/a Ally.Del.Rep, an employee of Ally Financial Inc., to '*push through*' the creation of the Ally account and its debt in Plaintiffs' identities." (ECF No 1. at 19.) This conclusion of "schem[ing]," especially with an unknown defendant, is insufficient. Beyond this allegation, Plaintiffs only relay individual interactions that occurred with various Defendants as giving rise to the numerous Counts and predicate acts. (*See* ECF No. 1.) "Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise." *McCullough*, 382 F. App'x at 231. There are likewise no allegations regarding the RICO enterprise's structure or organization. Given the Complaint fails to provide specific information beyond including mere claims of predicate acts and a bare-bones list of enterprise members, this Court cannot ascertain whether such acts were allegedly performed in a concerted fashion with a coordinated purpose, *i.e.* as an enterprise, for a RICO claim.

As for the claim under the New Jersey RICO statute, the statute "was and should be consistent with the federal RICO statute." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 510 (3d

Cir. 2006). "[T]he primary criterion of New Jersey's 'pattern of racketeering activity' [requirement] is 'relatedness.' That calls for the application of a broad standard involving the totality of all relevant circumstances, which may include" the continuity of the activity. *State v. Ball*, 661 A.2d 251, 265 (N.J. 1995). However, the Supreme Court of New Jersey has similarly adopted the same totality of the circumstances test used for a federal RICO claim. *Zahl, M.D. v. New Jersey Dept. of Law and Public Safety*, 2009 WL 806540, at *8 (D.N.J. 2009) (citing *Ball*, 661 A.2d at 265). Since Plaintiffs Federal RICO allegation is insufficient to support a claim of racketeering, so too must the New Jersey state RICO claim fail.

Accordingly, the Del Toyota Defendants' Motion to Dismiss Count V is **GRANTED**.

### 3. Remaining Claims

The remaining claims against the Del Toyota Defendants are: (1) Breach of Fiduciary Duty (Count VI); (2) Common Law Fraud against all Defendants (Count IX); (3) Unconscionable Practices in Violation of the CFA against all Defendants (Count X); and (4) Vicarious Liability of Del Toyota (Count XIV). The Del Toyota Defendants' Motion fails to address these claims. (*See* ECF No. 18.) Instead, the Motion references some claims but not others and states: "the following counts of Plaintiffs' Complaint must be dismissed: (1) any claim under RICO . . . (2) intentional infliction of emotional distress . . . (3) any claims for a violation of a criminal statute. . . ." (*Id.* at 1–2.) As such, the Del Toyota Defendants have waived their arguments as to these Counts.[9]

---

[9] While the Del Toyota Defendants include a section arguing that all claims against the individual defendants, namely Lopez, Karkoska, and Delvecchio, should be dismissed due to Plaintiffs failing to allege facts sufficient to pierce the corporate veil (ECF No. 18-1 at 10–12), such arguments are misplaced because Plaintiffs have not attempted to pierce the corporate veil with this lawsuit. Indeed, their claims appear to be made against both the individuals in their personal capacities, given their own alleged actions, and the corporate entity through its employees' actions. (*See* ECF No. 1.) Plaintiffs' *pro se* status entitles his pleading to liberal construction. *Woods v. Murphy*, Civ. A. No. 22-4284, 2023 WL 2784408, at *2 (D.N.J. Mar. 31, 2023) (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation

Accordingly, Del Toyota, Lopez, and Karkoska's Motion to Dismiss Counts VI, IX, X, and XIV is **DENIED**.

### F. Request for Punitive Damages

The Del Toyota Defendants included in their Motion a request for this Court to strike the punitive damages request by Plaintiffs because they have "fail[ed] to plead facts sufficient to show actual malice or wanton and willful disregard." At this stage, it is not necessary to determine whether Plaintiffs have proven the Defendants had an intent to bring them harm.

Accordingly, in light of the Court's rulings allowing fraud and other related claims to proceed, which do require a showing of deliberate acts or omissions, this request is **DENIED**.

### G. Request for Leave to Amend

In each Opposition, Plaintiffs request to be given leave to amend the Complaint. (ECF Nos. 28 at 5, 30 at 4.) Both TMS and the Del Toyota Defendants request this Court dismiss claims with prejudice. (ECF Nos. 16 at 1, 18 at 1.)

The Court grants Plaintiffs leave to amend the Complaint as to all claims against all Defendants, other than the ones based upon statutes which do not provide a private right of action, *see supra* Section (III)(D), because it would not be futile for them to attempt to correct the identified deficiencies for such Counts. Moreover, there is no apparent equitable reason to deny Plaintiffs leave. The Federal Rules of Civil Procedure generally require the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15. Courts also generally grant *pro se* plaintiffs, such as Plaintiffs here, leave to amend where possible. *See Gambrell v. Arias*, Civ. A. No. 14-6758,

---

to liberally construe a *pro se* litigant's pleadings is well-established."); *Walker v. Met. Tower Life Ins. Co.*, Civ. A. No. 15-240, 2016 WL 844838, at *2 (D.N.J. Mar. 4, 2016) ("In a case brought *pro se* such as this one, the Court must construe the complaint liberally in favor of the plaintiff."); *Sanchez v. Poag*, Civ. A. No. 11-3824, 2016 WL 1134536, at *2 (D.N.J. Mar. 22, 2016) (same).

2015 WL 13647384, at *1 (D.N.J. May 5, 2015) (stating that "[b]ased on Plaintiffs' *pro se* status, I will give them leave to amend their complaint"); *Pydeski v. Aetna Ins. Co. Disability Servs.*, Civ. A. No. 18-15305, 2019 WL 13396864, at *2 (D.N.J. Sept. 4, 2019) (noting that "courts in this Circuit are required to grant a *pro se* Plaintiff leave to amend a deficient Complaint unless amendment would be inequitable or futile"); *Johnson v. Performance Food Grp.*, Civ. A. No. 10-3742, 2010 WL 4668346, at *3 (D.N.J. Nov. 5, 2010) ("In light of Plaintiff's *pro se* status, Plaintiff is hereby granted leave to amend his complaint to cure the pleading deficiencies."). Therefore, in the interest of justice, the Court will allow Plaintiffs to amend the Complaint as described since doing so will ensure they have a fair opportunity to state his updated claims in the appropriate manner.

## IV.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, TMS's Motion to Dismiss (ECF No. 16) Plaintiffs' Complaint (ECF No. 1) is **GRANTED**. The Del Toyota Defendants' Motion to Dismiss (ECF No. 18) Plaintiffs' Complaint (ECF No. 1) is **GRANTED IN PART** and **DENIED IN PART**. The Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE** as to all Defendants as to Counts I, II, III, IV, and XV. The Complaint (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** as to TMS on Counts V, IX, X, XIII, and XIV, **DISMISSED WITHOUT PREJUDICE** as to Delvecchio on Counts V, IX, and X, and **DISMISSED WITHOUT PREJUDICE** as to Del Toyota, Lopez, and Karkoska on Counts V and XI. An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  December 26, 2024